UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| STEPHEN GEORGE ARNOLD, | ) | Case No. 07-11543 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MANUEL L. PERKINS and | ) | Adv. No. 08-2004 |
| CHRISTINE PERKINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN GEORGE ARNOLD et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This adversary proceeding was tried before the Court on October 23, 2009. Rayford K. Adams, III appeared on behalf of Stephen George Arnold and Jimmy R. Summerlin, Jr. appeared on behalf of Manuel and Christine Perkins. In this case, the Perkinses seek a denial of Mr. Arnold's bankruptcy discharge pursuant to Section 727(a)(2) of the Bankruptcy Code, claiming that he transferred property of the estate within one year prior to filing his bankruptcy petition, with the intent to hinder, delay, or defraud them. They also assert that Mr. Arnold violated N.C. Gen. Stat. § 75-1.1 et seq., which is North Carolina's Unfair and Deceptive Trade Practices Act.

Based upon the evidence presented at trial and a review of the arguments of counsel and the entire official file, the Court hereby makes the following findings of fact and conclusions of law.

## I. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and the General Order of Reference entered by the United States District Court for the Middle District of North Carolina on August 15, 1984.  This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(J) and (O), which this Court has the jurisdiction to hear and determine.

## II. FACTS

Mr. Arnold is the sole shareholder and President of Arcon, Inc. ("Arcon"), a utility construction and installation company.  In 2002, Arcon had the option to purchase 500 acres of real property at Burlington Road, U.S. Route 70, in Rock Creek Township, Guilford County, North Carolina.  Arcon wanted to purchase this property in order to develop a subdivision known as Brightwood Farms.  To fund the purchase and development of the property, Arcon sought to borrow $1,000,000 from Central Carolina Bank & Trust ("CCB").  CCB required a co-signer with greater financial strength.  Mr. Arnold approached the Perkinses.  On May 23, 2002, Mr. Arnold, Arcon, and the Perkinses entered into an agreement that the Perkinses would provide a personal guaranty for the $1,000,000 line of credit with CCB.  In return, Arcon would pay a $1,000 fee to the Perkinses for each lot sold in the Brightwood Farms subdivision.  The subdivision plans envisioned 1,606 total lots.

Also on May 23, 2002, Mr. Arnold and the Perkinses entered into a guaranty agreement, in which Mr. Arnold personally guaranteed all of Arcon's obligations with respect to the line of credit.  In essence, this agreement provided that Mr. Arnold would repay the Perkinses for any money that they paid pursuant to their personal guaranty.

By April of 2004, the Brightwood Farms project was having cash flow problems. In order to provide additional working capital for Arcon, the Perkinses guaranteed an additional $275,000 on the line of credit to CCB. In return, Mr. Arnold agreed that the Perkinses would receive an increased fee of $1,200 for each lot sold. On September 16, 2004, the parties entered into an agreement memorializing and amending the previous agreements. Pursuant to this agreement, Mr. Arnold gave the Perkinses a security interest in certain construction equipment.

The Brightwood Farms project experienced many difficulties related to the weather. By the fall of 2005, Arcon had largely ceased its operations. Arcon and Mr. Arnold stopped making payments on the line of credit, which had been transferred to SunTrust Bank from CCB. Pursuant to their guaranty, the Perkinses began making the required payments.

On February 15, 2006, the Perkinses filed a civil complaint in the Guilford County Superior Court, seeking a judgment against Mr. Arnold and Arcon in relation to the agreements described above. On September 15, 2006, the parties entered into a settlement agreement, which provided that Mr. Arnold and Arcon would reimburse the Perkinses for their payments on the line of credit, and provided the Perkinses with liens on certain real property and equipment. Concurrent with this agreement, Mr. Arnold and Arcon entered into a confession of judgment.

Mr. Arnold and Arcon defaulted on the payments required by the settlement agreement. On January 19, 2009, the Perkinses filed a motion in Guilford County Superior Court to enter judgment in the amount of $1,275,000, pursuant to the confession of judgment. Although the motion was initially scheduled to be heard in February, the hearing was rescheduled and ultimately heard on Monday May 21, 2007. Mr. Arnold testified that he received notice of the hearing. He also testified that he knew that a judgment would be entered against him on May 21,

2007, and that a lien would be placed on his real property.

At 4:38 p.m. on Friday May 18, 2007, Mr. Arnold transferred multiple tracts of real property to his relatives. These transfers prevented the Perkinses' judgment from attaching to the transferred property when the judgment was entered at 10:08 a.m. on Monday May 21, 2007.

Mr. Arnold transferred Lots 1 and 2 of Northwood Acres (the "Northwood Acres Lots"), recorded in Plat Book 22, Page 82, Guilford County Registry, to his father-in-law, Joel Carter. The lots are directly adjacent to Mr. Arnold's residence. His father-in-law paid no consideration for the transfer. At the time of the transfer, the two liens on the property greatly exceeded its fair market value. Mr. Arnold continued to make mortgage and tax payments on the Northwood Acres Lots. He testified that he could go to the property freely and that he continued to treat the property as his own.

Mr. Arnold also transferred a 15 foot wide strip of land (the "15 Foot Strip"), recorded in Plat Book 11, Page 94, Guilford County Registry, to his father-in-law, Joel Carter. This property is also located near Mr. Arnold's residence, and again no consideration was paid for the transfer. Although Mr. Arnold testified that the 15 Foot Strip was valueless, it has value because it provides a "spite strip," which protects against further development around his residence.

Mr. Arnold also transferred Lots 74 and 75 of Phase II of Olde Eden Estates (the "Olde Eden Lots"), recorded in Plat Book 112, Page 72, Guilford County Registry, to his parents, Gordon and Rosalie Arnold. This land is adjacent to his parents' residence. Although the transfer was allegedly for a sale price of $75,000, it was not paid until three months later. On August 15, 2007, Rosalie Arnold wrote a check to her son for $55,000, representing the sales price less a $20,000 debt owed by Mr. Arnold to his parents. Mr. Arnold used the proceeds to

pay a $30,000 to $35,000 lien on the property and kept the remaining $15,000 to $20,000.

Mr. Arnold also caused Arcon to transfer 12.12 acres of real property located at 104 Avondale Street, High Point, North Carolina (the "Avondale Property"), to his father-in-law, Joel Carter.  Again, there was no consideration paid for the transfer.

Mr. Arnold testified that although he did not tell the Perkinses that he was transferring the properties, he had previously offered to give Mr. Perkins liens on the properties. He testified that the date of the transfers was coincidental and that he was not trying to prevent the Perkinses from obtaining a lien on the properties.  Mr. Perkins testified that he was never offered a security interest in any of the transferred properties.

On October 26, 2007, both Mr. Arnold and Arcon filed Chapter 7 bankruptcy petitions. On December 17, 2007, Mr. Arnold's Section 341 meeting was held.  At the meeting, the Chapter 7 Trustee asked Mr. Arnold why the 15 Foot Strip was transferred to his father-in-law. Mr. Arnold responded, under oath, that it was conveyed to "make it more difficult for an [sic] particular creditor to access it."  On January 7, 2008, Arcon's Section 341 meeting was held.  At the meeting, the Chapter 7 Trustee asked Mr. Arnold, as President of Arcon, why the Avondale Property was transferred by Arcon to his father-in-law.  He responded, under oath, that it was transferred "[t]o preclude one of my creditors from coming after it."  At trial, Mr. Arnold acknowledged that the Perkinses were the only creditors who had sued him or threatened legal action against him.

### III.  ANALYSIS

A.    11 U.S.C. § 727(a)(2)

One of the principal goals of the Bankruptcy Code is to provide the debtor a fresh start.

5

However, the "fresh start" policy is limited to the "honest but unfortunate debtor." Grogan v. Garner, 498 U.S. 279, 286-87 (1991). This policy is furthered by Section 727 of the Bankruptcy Code, which provides for the denial of a bankruptcy discharge in certain situations. The Perkinses contend that Mr. Arnold should be denied a discharge pursuant to Section 727(a)(2), which provides that a court should not grant a debtor's discharge if:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed–
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2).

To prevail on a Section 727(a)(2) cause of action, a creditor must establish that the debtor (1) transferred or concealed, (2) his property, (3) with the intent to hinder, delay or defraud a creditor, (4) within one year before filing the petition. Id.; see also Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002); Vill. of San Jose v. McWilliams, 284 F.3d 785, 791 (7th Cir. 2002); CM Partnership v. Groover (In re Groover), No. 03-51013, slip op. at 3 (Bankr. M.D.N.C. Jan. 16, 2004) (2004 WL 212948).

The standard of proof in a discharge action is by a preponderance of the evidence. See Grogan, 498 U.S. at 289; Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244, 249 (4th Cir. 1994); Ferguson v. Gordon (In re Gordon), No. 99-6036, slip op. at 2 (Bankr. M.D.N.C. May 8, 2002) (2002 WL 925028). Once a prima facie case has been established, "the burden may shift to the debtor to provide satisfactory, explanatory evidence." Farouki, 14 F.3d at 249. However, the

creditor bears the ultimate burden of proof.  Id.

Under Section 727, the debtor must have had the actual intent to hinder, delay, or defraud his creditors.  See Pavy v. Chastant (In re Chastant), 873 F.2d 89, 91 (5th Cir. 1989); First Leasing Co. v. McGalliard (In re McGalliard), 183 B.R. 726, 732 (Bankr. M.D.N.C. 1995).  When a debtor admits that he had the intent to defraud a creditor, there is no need to rely on circumstantial evidence.  Adeeb v. Consumers Oil Co. (In re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986).  It is unfortunate but nonetheless true that those debtors with fraudulent intent are unlikely to disclose it.  Thus, courts typically look to circumstantial evidence to determine whether the intent to defraud existed.  McWilliams, 284 F.3d at 790 ("because it is unlikely that the debtor will admit fraud, intent may be established by circumstantial evidence").  Courts have identified "badges of fraud" that indicate fraudulent intent, including:

    (1)    family, friendship or insider relationships between the parties;

    (2)    the debtor's retention of possession, benefit or use of the property in question;

    (3)    the lack or inadequacy of consideration for the transfer;

    (4)    the debtor's financial condition before and after the transfer;

    (5)    the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;

    (6)    the general chronology of the events and transactions under inquiry;

    (7)    the debtor's attempt to keep the transfer a secret; and

    (8)    the proximity of the transfer to the debtor's filing bankruptcy.

See, e.g., Robertson v. Dennis (In re Dennis), 330 F.3d 696, 702 (5th Cir. 2003); Watman, 301

F.3d at 8; McWilliams, 284 F.3d at 791; Pavy, 873 F.2d at 91; Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2d Cir. 1983); Annino, Draper & Moore v. Lang (In re Lang), 256 B.R. 539, 541 (1st Cir. B.A.P. 2000); Groover, slip op. at 3; McGalliard, 138 B.R. at 732; Anderson v. Hooper (In re Hooper), 274 B.R. 210, 217 (Bankr. D.S.C. 2001).

A Section 727(a)(2) analysis is necessarily fact-sensitive, and the presence of only one badge of fraud may provide a basis for finding a fraudulent intent. Groover, slip op. at 3; McGalliard, 138 B.R. at 732. Whether the transfer actually injures a creditor is irrelevant. McWilliams, 284 F.3d at 793.

In this case, the only contested element of Section 727(a)(2) is whether Mr. Arnold had the intent to hinder, delay, or defraud a creditor.[1] Remarkably, Mr. Arnold admitted his fraudulent intent at his Section 341 meeting and at Arcon's Section 341 meeting, stating that he made the transfers to "make it more difficult" for a "particular creditor" to access the property. At trial, Mr. Arnold testified that these statements to the Chapter 7 Trustee were "stupid and ridiculous," made "in an attempt to make a point with a bit of sarcasm and irony." He characterized his statements as "tongue-in-cheek." However, the transcripts of the two Section 341 meetings do not support Mr. Arnold's characterization that his statements, made three weeks apart, were a joke. On this point, his testimony at trial was not credible.[2]

Nevertheless, the Court does not need to rely solely on Mr. Arnold's admissions. There are multiple badges of fraud in this case. The transfers were made to family members. No

---

[1] Mr. Arnold has admitted that the other requirements of Section 727(a)(2) have been met.

[2] In reference to these statements, Mr. Arnold testified that, "I have never said anything dumber." The Court is inclined to agree with this statement.

8

consideration was given for the transfers.[3] Mr. Arnold retained the use and benefit of the properties. He continued to make mortgage and tax payments on the Northwood Acres Lots. His financial condition was deteriorating at the time of the transfers. Mr. Arnold transferred different properties, to different family members, just before the close of business on a Friday, knowing that a judgment would be entered against him the following Monday morning. The Court refuses to believe that this was a coincidence. Just over five months later, Mr. Arnold and Arcon filed their bankruptcies.

Given the fact that Mr. Arnold admitted his intent in the Section 341 meetings, and the extensive list of badges of fraud in this case, the Perkinses have shown by a preponderance of the evidence that Mr. Arnold had the fraudulent intent to hinder, delay, or defraud his creditors, as required by Section 727(a)(2). Since this was the only contested issue in this cause of action, Mr. Arnold's discharge will be denied.

### B.     Unfair or Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1 et seq

N.C. Gen. Stat. § 75-1.1(a) states that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Section 75-1.1(b) provides that "'commerce' includes all business activities, however denominated." N.C. Gen. Stat. § 75-1.1(b). Section 75-16 provides a private right of action for "any person" injured "by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter . . . ." N.C. Gen. Stat. § 75-16.

---

[3]Although no consideration was given at the time of the transfer, three months later Mr. Arnold's parents paid $55,000 for the Olde Eden Lots. Mr. Arnold and his parents both agreed that the property was worth $75,000. No consideration was ever given for any of the other properties.

The North Carolina Supreme Court noted that, in enacting N.C. Gen. Stat. § 75-16, the North Carolina legislature "intended to establish an effective private cause of action for aggrieved consumers." Marshall v. Miller, 276 S.E.2d 397, 400 (N.C. 1981). Moreover, the North Carolina General Assembly stated that the purpose of Section 75-1.1 is "to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public . . . to the end that good faith and fair dealings between buyers and sellers at all level[s] of commerce be had in this State." N.C. Gen. Stat. § 75-1.1 (1975) (quoted in Bhatti v. Buckland, 400 S.E.2d 440, 443-44 (N.C. 1991)). Although the Act was intended to benefit consumers, its protections may extend to businesses in appropriate contexts. HAJMM Co. v. House of Raeford Farms, Inc., 403 S.E.2d 483, 492 (N.C. 1991).

The elements required to establish a prima facie claim under Chapter 75 are (1) an unfair or deceptive act or practice (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business. See Basnight v. Diamond Developers, Inc., 146 F. Supp. 2d 754, 765 (M.D.N.C. 2001); Walker v. Fleetwood Homes of North Carolina, 653 S.E.2d 393, 399 (N.C. 2007); Gray v. North Carolina Ins. Underwriting Ass'n, 529 S.E.2d 676, 681 (N.C. 2000).

Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact that the practice has in the marketplace. Moseley v. Arth (In re Vendsouth, Inc.), No. 01-2016, slip op. at 19 (Bankr. M.D.N.C. Oct. 10, 2003) (2003 WL 22399581); Marshall, 276 S.E.2d at 403. A practice is unfair when it offends established public policy or when it is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

10

See Basnight, 146 F. Supp. 2d at 765; Marshall, 276 S.E.2d at 402.  A practice is "deceptive" if it has the capacity or tendency to deceive.  See Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir.1987); Basnight, 146 F. Supp. 2d at 765; Marshall, 276 S.E.2d at 403.

"'Commerce' in its broadest sense comprehends intercourse for the purposes of trade in any form."  Sara Lee Corp. v. Carter, 519 S.E.2d 308, 311 (N.C. 1999).  Nevertheless, to "affect commerce," the allegedly unfair or deceptive acts must have a tangible effect on the marketplace.  Anderson v. Brokers, Inc. (In re Brokers, Inc.), 396 B.R. 146, 161 (Bankr. M.D.N.C. 2008) (citing Esposito v. Talbert & Bright, Inc., 641 S.E.2d 695, 698 (N.C. App. 2007)).

"Business activities" in Section 75-1.1(b) "is a term which connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized."  Sara Lee, 519 S.E.2d at 311 (quoting HAJMM, 403 S.E.2d at 493).  The term "business" generally imports a broad definition.  Bhatti v. Buckland, 400 S.E.2d 440, 443 (N.C. 1991).

To establish a claim, the Perkinses must show that Mr. Arnold's unfair or deceptive acts were "in or affecting commerce."  However, in this case, there were no "business activities" within the meaning of N.C. Gen. Stat. § 75-1.1(b).  The transfers were made to family members, and not in the course of any "regular, day-to-day activities, or affairs" of a business or commercial enterprise.  No consideration was given for the transfers. There was no consumer involved in the transactions, nor was any consumer indirectly affected.  Thus, there was no tangible effect on the marketplace.

The Court finds that the transfers were not in or affecting commerce. Therefore, the Perkinses have not established a prima facie claim under Chapter 75, and their cause of action will be denied.

## IV.  CONCLUSION

Based on the foregoing, the Court holds that the Defendant Stephen Arnold violated Section 727(a)(2) of the Bankruptcy Code and therefore is not entitled to receive a bankruptcy discharge. The Court also holds that the claim of the Perkins pursuant to N.C. Gen. Stat. § 75-1.1 et seq. should be denied because the actions of Mr. Arnold were not in or affecting commerce.

This opinion constitutes the Court's findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| STEPHEN GEORGE ARNOLD, | ) | Case No. 07-11543 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MANUEL L. PERKINS and | ) | Adversary Proceeding: 08-2004 |
| CHRISTINE PERKINS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHEN GEORGE ARNOLD et al, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

PARTIES IN INTEREST

Stephen George Arnold

Manuel and Christine Perkins

Jimmy R. Summerlin, Jr., Esq.

Rayford K. Adams, III, Esq.

Everett B. Saslow, Trustee

Michael D. West, Bankruptcy Administrator

13